[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-12030
Non-Argument Calendar
_____

D.C. Docket No. 6:17-cr-00185-GAP-DCI-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ARMANDO LAFUENTE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 14, 2019)

Before ED CARNES, Chief Judge, BRANCH, and JULIE CARNES, Circuit
Judges.

PER CURIAM:

Armando Lafuente pleaded guilty to theft of government funds in excess of $1,000 and was sentenced to a term of imprisonment of twelve months and one day. Lafuente now appeals, claiming that the district court erred in calculating the amount of loss that resulted from his disability fraud. He also claims that the sentence imposed was substantively unreasonable.

I.

Lafuente enlisted in the United States Air Force in 1979 and was honorably discharged in 1981. Before his discharge Lafuente strained his back and was hospitalized for 17 days. After his discharge he was diagnosed with a lumbosacral strain with left sciatic radiculopathy and rated 20 percent disabled by the Department of Veterans Affairs. He also participated in VA counseling for major depressive disorder and attempted to take his own life after his son and step-son died within two years of each other. By January 2009 Lafuente's condition had worsened and the VA increased his disability rating to 40 percent. In November 2009 Lafuente was hospitalized after attempting suicide for a second time. He reported extreme pain and frustration with the VA for not doing more to help him.

In December 2009 Lafuente reported that he had lost the use of both of his feet and came in for a disability examination. The disability examiner discontinued the examination when Lafuente was in "apparent distress" while being transferred from his wheelchair to an examination table. Another physician

2

who was familiar with Lafuente thought this was unusual and gave Lafuente an injection of saline solution, while telling him that it was pain medication. Lafuente reported his pain level had decreased to 6 out of 10 after reporting a pain level of 15 before the injection of the placebo. After the VA declined to increase his disability rating, Lafuente appealed in 2011. In his appeal Lafuente claimed to have been wheelchair bound by October 2008 despite his initial claim that he had been wheelchair bound starting at the end of 2009. Based on reports from an independent doctor, the VA granted Lafuente a 100 percent disability rating, finding that he had completely lost the use of both feet. The VA paid Lafuente more than $4,000 a month in disability payments and gave him a one-time automobile grant of $18,900. Lafuente also used a door-to-door transportation program for disabled veterans nearly 200 times at a total cost of $64,145.86.

In 2014 a neighbor of Lafuente's called the VA's Office of Inspector General and reported that Lafuente could walk. In 2016 the VA installed a surveillance camera on a pole in front of Lafuente's home. Over an eight-week period it recorded Lafuente walking and driving. In March 2016 Lafuente was examined by a VA doctor who was also asked to review Lafuente's medical records and the footage from the camera outside Lafuente's home. The doctor stated that he would expect the type of disability that Lafuente claimed to have to be permanent and not to change over time. The doctor opined that it was

3

extremely unlikely that Lafuente was entirely unable to use his feet in December 2009 given his known functional abilities in 2016.

In January 2017 Lafuente agreed to speak with VA agents. Lafuente initially told them that he was unable to walk or drive, that his condition was constant, and that he did not have any good days. He claimed not to have driven a car since October 2008. The agents then showed Lafuente pictures from the surveillance camera showing him walking and driving. Lafuente first told the agents that the pictures depicted somebody else, then that the pictures depicted him from a long time ago, and finally that they depicted him only on one day when his symptoms were mild. When presented with evidence contradicting these claims, Lafuente explained that he had lied about the severity of his disabilities so that the VA would take his situation and his pain seriously. He claimed that he had been unable to walk at all between 2008 and 2011, but had regained the ability to walk by 2014. When confronted about his changing narrative, Lafuente responded that the agents did not say that they had proof. When asked if he would have continued lying otherwise, Lafuente said: "Well, you've got to tell me, 'Okay, I've got proof.' Okay. And I'll say, 'Okay, I, I did this. I have this; I have this and I've got an improvement.' You know?"

Lafuente later pleaded guilty and a PSR was prepared in advance of sentencing. The PSR listed that Lafuente was responsible under U.S.S.G. § 2B1.1

4

for a loss amount of $157,471.57, which was the entirety of the funds that Lafuente received between 2009 and 2017 for the alleged loss of the use of his feet. It listed Lafuente's maximum statutory term of imprisonment as ten years and his guideline imprisonment range as twelve to eighteen months. It recommended a sentence of three years probation, listing Lafuente's health issues as possible mitigating factors.

Lafuente objected to the loss amount, contending that he had been unable to use his feet between 2009 and 2013. At the sentence hearing the district court heard arguments from both sides, including testimony by Special Agent Mark Mientek relating what a VA doctor had told Mientek about Lafuente's condition. The district court stated that it had reviewed the PSR, Lafuente's sentencing memorandum, and transcripts from Lafuente's 2017 interview with VA agents. It overruled Lafuente's objection to the loss amount and sentenced him to a term of imprisonment of twelve months and a day. The court discussed several aggravating and mitigating factors such as Lafuente's health, the fact that he had lied to VA agents, the loss amount, and the fact that Lafuente had defrauded a government agency meant to help veterans. The court also levied restitution and forfeiture against Lafuente in the amount of $157,471.57. Lafuente objected to the substantive reasonableness of the sentence and was overruled. He now appeals the

district court's determination of the loss amount, as well as the substantive reasonableness of his sentence.

## II.

Lafuente first contends that the district court erred in calculating the amount of loss that resulted from his fraud. We review for clear error a district court's determination of the amount of loss for sentencing purposes. United States v. Medina, 485 F.3d 1291, 1303 (11th Cir. 2007). Clear error is present only if we are "left with a definite and firm conviction that a mistake has been committed" by the district court. United States v. Crawford, 407 F.3d 1174, 1177 (11th Cir. 2005) (quotation marks omitted). "There is no clear error in cases in which the record supports the district court's findings." United States v. Rodriguez, 751 F.3d 1244, 1255 (11th Cir. 2014) (quotation marks omitted).

The amount of loss must be proven by a preponderance of the evidence with reliable and specific evidence. Medina, 485 F.3d at 1304. But the district court must only make a reasonable estimate of the loss amount because the exact amount of loss caused by a defendant's fraud is often difficult to determine accurately. Id. A district court may consider undisputed statements in the PSR as well as specific circumstantial evidence presented at the sentence hearing. United States v. Baldwin, 774 F.3d 711, 727 (11th Cir. 2014). Reliable hearsay may also be considered. United States v. Rodriguez, 732 F.3d 1299, 1305 (11th Cir. 2013). To

6

successfully challenge a sentence based on the consideration of hearsay, a defendant must show both that the challenged evidence was materially false or unreliable and that it actually served as the basis for his sentence.  United States v. Ghertler, 605 F.3d 1256, 1269 (11th Cir. 2010).

The district court did not clearly err in calculating the loss amount.  Lafuente argues that the government only has "hard evidence" that he could walk from 2012 on and so the district court should not have counted the benefits he received between 2009 and 2012.  But the district court was permitted to rely on circumstantial evidence and was not required to base its determination solely on such "hard evidence."  See Baldwin, 774 F.3d at 727.  It relied on Mientek's testimony that a VA doctor had told him that the doctor would have expected Lafuente's disability to be permanent and, given the nature of Lafuente's alleged disabilities, that it was very unlikely that Lafuente's symptoms would wax and wane to the extent demonstrated by the video footage recorded by the VA.  The doctor also stated that Lafuente's 2009 disability rating likely was inaccurate. Lafuente argues generally that discrepancies in Mientek's testimony render it unreliable, but he has not alleged that Mientek's account of the doctor's opinion was materially false.  Because Lafuente did not object to Mientek's testimony in the district court, we review its admissibility only for plain error.  United States v. Carpenter, 803 F.3d 1224, 1237 (11th Cir. 2015) (finding that if a defendant fails

7

to clearly state the grounds for an objection in the district court, he waives the objection on appeal and review is limited to plain error).  Because nothing in the record suggests that Mientek's testimony regarding the doctor's opinion was materially false or unreliable, we cannot say that the district court committed plain error in considering it.  See Ghertler, 605 F.3d at 1269.

The government also produced other circumstantial evidence, such as Lafuente reporting inconsistent dates at which he was able to start walking again, as well as Lafuente claiming that his pain was reduced after being given a placebo. Lafuente claims that he reported inconsistent dates because his recovery was gradual and argues that the fact that he said that the placebo reduced his pain does not necessarily speak to his ability to use his feet.  He also notes that the doctor Mientek spoke with did not say it was impossible for him to recover, just unlikely. But the district court was required to calculate the amount of loss only by a preponderance of the evidence.  Given the substantial amount of reliable and specific evidence in the record showing that Lafuente lied about his disability, we cannot say that the district court clearly erred in finding that a preponderance of the evidence indicated that the loss amount should include the benefits Lafuente received between 2009 and 2012.[1]

---

[1] Lafuente argues for the first time in his reply brief that his restitution and forfeiture amounts should also be limited to the amounts fraudulently obtained between 2014 and 2017.

III.

Lafuente also contends that the sentence imposed by the district court was substantively unreasonable.  We review the reasonableness of a sentence for abuse of discretion, considering the totality of the circumstances.  See Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007).  Lafuente bears the burden of establishing that the district court sentenced him unreasonably in light of the record and the factors set forth in 18 U.S.C. § 3553(a).  United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010).  In imposing a particular sentence, the court must consider the nature and circumstances of the offense and the history and characteristics of the defendant.  § 3553(a)(1).  The weight given to any particular sentencing factor is committed to the sound discretion of the district court.  United States v. Dougherty, 754 F.3d 1353, 1361–62 (11th Cir. 2014).

We will vacate a sentence only if "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case."  United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation marks omitted).  We ordinarily expect a sentence falling within the guideline range to be reasonable.  United States v. Hunt,

Because those arguments were raised for the first time in his reply brief, we decline to consider them.  See United States v. Lopez, 649 F.3d 1222, 1246 (11th Cir. 2011).

526 F.3d 739, 746 (11th Cir. 2008).  A sentence well below the statutory maximum is another indicator of reasonableness.  See United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008) (per curiam).

The twelve month and one day sentence imposed by the district court was substantively reasonable.   It is at the bottom of the guideline range and well below the statutory maximum of ten years.  See Gonzalez, 550 F.3d at 1324; Hunt, 526 F.3d at 746.  In imposing it the district court explicitly discussed several § 3553(a) factors and did not abuse its discretion in weighing them.  These factors included several relating to the seriousness of the offense, as well as to Lafuente's history and characteristics.  The court put great significance on the fact that Lafuente defrauded a government agency meant to assist veterans, the length of time Lafuente's crime went on, the amount of money it involved, the fact that Lafuente lied to government agents, and Lafuente's health.

Lafuente argues that the district court weighed the seriousness of his offense too heavily and should have put greater weight on mitigating factors like his mental health issues and acceptance of responsibility.  But the weight given to any specific § 3553(a) factor is within the district court's discretion.  Dougherty, 754 F.3d at 1361–62.

**AFFIRMED.**

10