[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-10074
Non-Argument Calendar
_____

D.C. Docket No. 4:16-cr-00030-MW-CAS-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LEE JOHN MAHER,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(April 8, 2020)

Before WILLIAM PRYOR, BRANCH and LUCK, Circuit Judges.

WILLIAM PRYOR, Circuit Judge:

Lee John Maher appeals his convictions for conspiring to defraud the United States by committing mail fraud, wire fraud, and receiving, concealing, and retaining money of the United States, 18 U.S.C. §§ 371, 1349, and for receiving, concealing, and retaining money of the United States, *id.* § 641. Maher argues that his prosecution was barred by the five-year statute of limitations for non-capital offenses. *See id.* § 3282(a). We affirm Maher's conviction for conspiracy because he does not dispute that he committed two of the three alternative objectives of the conspiracy within the limitation period. We also affirm Maher's conviction for receiving, concealing, and retaining government money on the ground it is a continuing offense for which he was timely indicted.

## I. BACKGROUND

On May 17, 2016, a grand jury returned a two-count indictment against Maher and Larry Kenneth Long. Count one alleged that, between April 1, 2009, and March 31, 2013, Maher and Long conspired to commit mail fraud, *id.* § 1341, to commit wire fraud, *id.* § 1343, and to receive, conceal, and retain federal grant money, *id.* § 641, with their last overt act occurring on November 15, 2012. Count two alleged that, "[b]etween on or about December 10, 2010, and on or about March 31, 2013, . . . Maher and . . . Long, knowingly and willfully did receive, conceal, and retain, with the intent to convert to their own use and gain, . . . grant funds disbursed from the United States Department of Energy, through the State of

2

Florida, in the approximate amount of $2,232,000, knowing such money to have been converted." Maher pleaded not guilty to both charges.

Maher moved to dismiss count two of his indictment as barred by the statute of limitations. 18 U.S.C. § 3282(a). He argued that the limitation period expired five years after December 10, 2010, when he deposited the grant funds into a bank account. The government opposed dismissal and argued that Maher timely was indicted for retaining and concealing converted government funds under the doctrine of continuing offenses. After a hearing, the district court denied Maher's motion.

Evidence presented during trial proved that Maher and his employee, Long, concocted a fraudulent scheme to obtain federal grant money disbursed by the Office of Energy of the Florida Department of Agriculture and Consumer Services. Long applied for $2.5 million from a grant funded by the American Recovery and Reimbursement Act of 2009 for Maher's company, Clean Fuel, LLC, under the pretense of purchasing a Fairbanks Morse generator set. On May 13, 2010, Clean Fund executed a grant agreement that required it to invest $7 million for approved projects to be completed by April 30, 2012, for which it could receive a maximum reimbursement of $2.5 million. On October 13, 2010, the parties amended the agreement to add the generator set as an approved expense.

3

In November 2010, Clean Fuel requested reimbursement for $2,480,000 for purportedly purchasing the generator set. Maher and Long submitted forged documents and fake checks to establish that Clean Fuel had purchased the generator set and had invested more than $8 million in the project. After the grant manager approved the request, the State of Florida issued Clean Fuel a check for $2,232,000 for 90 percent of the amount requested, with the balance to be paid upon completion of the project. On December 10, 2010, Clean Fuel negotiated the check and Maher transferred the grant funds to several bank accounts. Maher used the funds to pay credit card bills, legal fees, some debts of Clean Fuel, and rent for his penthouse in Manhattan and to purchase box seats for professional football games. On May 31, 2011, at least $6,891.33 of the grant funds remained in one of Maher's bank accounts.

In January 2012, Long submitted a fraudulent monthly progress report to the Office of Energy. The report falsely stated that, in December 2011, Clean Fuel had purchased $2,480,000 in "electrical components" and had been negotiating to purchase property to house the generator set. The report also falsely stated that Clean Fuel had invested more than $8 million in the project.

In early February 2012, the Office of Energy notified Maher that the project was not progressing in accordance with the grant workplan and that Clean Fuel faced remedial action should it not come into compliance. On February 13, 2012,

4

Maher responded that Clean Fuel was "making every effort possible" to complete the project by the April deadline. In March 2012, Maher requested a six-month extension to complete his project and stated that Clean Fuel had invested $10 million in the project. On April 3, 2012, the Office of Energy informed Maher that it was terminating the grant agreement for cause, and in July 2012, the Office of Energy terminated the agreement.

Maher and Long continued to fake compliance with the agreement. They found a substitute generator that was the same make and model, but cost significantly less than the $2,232,000 they had been paid. In October 2012, Long sent a photograph of the substitute generator to the grant manager as evidence that Clean Fuel had purchased the generator set. On November 2, 2012, Maher put a $30,000 deposit on the substitute generator, and on November 15, 2012, Long sent the grant manager an email stating that Clean Fuel had purchased the generator set and it was ready to be shipped to their facility.

At the close of the evidence, Maher moved for a judgment of acquittal, which the district court denied. Fed. R. Crim. P. 29. The district court rejected Maher's arguments that his prosecution for receiving, concealing, and retaining government funds was untimely based on the face of his indictment, *see* 18 U.S.C. § 3282(a), and that, in the alternative, even if his crime was a continuing offense, his indictment was untimely when returned more than five years after negotiation

5

of the grant check on December 10, 2010. Maher also argued that his indictment for conspiracy was untimely when returned more than five years after he completed the object of the conspiracy, which was to receive grant funds.

The district court treated Maher's timeliness argument as a factual issue for the jury. It instructed the jury as follows that, if the government failed to prove that Maher participated in the conspiracy within the five years preceding his indictment and that, within that same period, he received, concealed, and retained the grant funds, it had to acquit him of the charges:

> The law requires that a prosecution be brought within a specified period after a crime is completed, in this case five years. Defendant asserts that prosecution of Count One and Two are barred by the statute of limitations because more than five years elapsed after the events constituting the alleged crimes and before the return of the indictment in this case. The indictment was returned on May 17, 2016.

> As to Count One, the statute of limitations issue for you to decide is whether defendant Maher was a member of the alleged conspiracy on or about May 17, 2011. As to Count Two, the statute of limitations issue for you to decide is whether defendant Maher received, concealed, or retained money of the United States with a value of more than $1,000, knowing it had been converted, and with the intent to convert it to . . . his use or gain, on or after May 17, 2011.

> The burden is on the government to prove beyond a reasonable doubt that the . . . offenses are not barred by the five-year statute of limitations. If the government has not sustained its burden regarding either count, then the law requires a verdict of not guilty as to each count.

The jury found Maher guilty of both counts of his indictment. The jury returned a special verdict finding Maher guilty of all three objectives of the

conspiracy. Maher renewed his motion for a judgment of acquittal on both counts of his indictment, and the district court denied the motion.

## II. STANDARD OF REVIEW

We review *de novo* the denial of a motion for a judgment of acquittal. *United States v. Hansen*, 262 F.3d 1217, 1236 (11th Cir. 2001). We also review *de novo* the application of a statute of limitations. *United States v. Carrell*, 252 F.3d 1193, 1198 (11th Cir. 2001).

## III. DISCUSSION

Maher argues that the five-year statute of limitations barred his prosecution for conspiring to receive, conceal, and retain government money and for the underlying substantive offense. *See* 18 U.S.C. § 3282(a). He contends that the limitations period began to run on December 10, 2010, when he negotiated the grant check and the period expired before the government obtained his indictment in May 2016. The government responds that we should affirm Maher's convictions because he does not dispute that he was timely indicted for conspiring to commit mail fraud and to commit wire fraud and because his crime of receiving, concealing, and retaining government money is a continuing offense for which the limitations period commenced running at the end of May 2011.

*A. The Undisputed Evidence Establishes that Maher Timely Was Indicted for Conspiracy.*

We need not address Maher's argument that he was not timely indicted for conspiring to receive, conceal, and retain government funds, 18 U.S.C. § 641, because we can affirm Maher's conviction based on the jury's special verdict finding him guilty of conspiring to commit mail fraud, *id.* § 1341, and to commit wire fraud, *id.* § 1343. "To obtain reversal of a district court judgment that is based on multiple, independent grounds, [Maher] must convince us that every stated ground for the judgment against him is incorrect." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014). Because "there is a conviction for a multi-object conspiracy, the evidence [had] only [to] be sufficient to sustain a conviction for any one of the charged objectives." *United States v. Medina*, 485 F.3d 1291, 1301 (11th Cir. 2007). Maher does not challenge the jury's findings that he conspired to commit mail fraud and to commit wire fraud within five years of his indictment, so we deem "abandoned any argument that th[ose] additional reasons [the jury identified to support his conviction for conspiracy] . . . was error." *See Sapuppo*, 739 F.3d at 680. "It follows that [Maher's conviction for conspiracy] is due to be affirmed." *Id.* at 683.

*B. The Government Timely Indicted Maher for Receiving, Concealing, and Retaining Government Money.*

The government is required to indict a person for a non-capital offense within five years of its commission. 18 U.S.C. § 3282(a). The statute of limitations serves "to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts . . . . punish[ed] by criminal sanctions." *Toussie v. United States*, 397 U.S. 112, 114 (1970). Enforcement of the limitations period ensures an accused does not have to defend against charges "when the basic facts may have become obscured by the passage of time" and reduces "the danger of official punishment because of acts in the far-distant past." *Id.* at 114–15.

The running of the statute of limitations depends on whether the accused's offense is determinate or continuing. When an accused commits a crime that is determinate, the five-year limitations period "begin[s] to run when the crime is complete," *id.* at 115 (internal quotation mark omitted), which is "when all the elements of the crime have been satisfied," *United States v. Pacchioli*, 718 F.3d 1294, 1300 (11th Cir. 2013). But if an accused commits a crime that "continue[s] to be perpetrated over time," *United States v. Gilbert*, 136 F.3d 1451, 1453 (11th Cir. 1998), the five-year period commences running on the date of the last act that furthers the crime, *Pacchioli*, 718 F.3d at 1302.

We construe the term "continuing offense" narrowly because it extends the statute of limitations. *Toussie*, 397 U.S. at 115. "A continuing offense is a

9

continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy." *United States v. Midstate Horticultural Co.*, 306 U.S. 161, 166 (1939). To qualify as a continuing offense "the explicit language of the substantive criminal statute [must] compel[] [that] conclusion" or "the nature of the crime involved . . . [must be] such that Congress must assuredly have intended that it be treated as a continuing one," *Toussie*, 397 U.S. at 115, because "each day's acts bring a renewed threat of the substantive evil Congress sought to prevent," *id.* at 122.

To classify Maher's offense, we have to determine which of the alternative means the government had to prove to obtain a conviction. The statute that Maher violated is phrased in the disjunctive to punish "[w]hoever receives, conceals, or retains" money of the United States. 18 U.S.C. § 641. But Maher's indictment alleged that he "knowingly and willfully did receive, conceal, and retain . . . money of the United States . . . ." Because the "statute specifies in the disjunctive several means of committing [the] offense, [Maher's] indictment [could] allege those means in the conjunctive and the Government [was] only required to prove one of them." *United States v. Minchew*, 417 F.2d 218, 220 n.4 (5th Cir. 1969). "Thus the Government was only required to prove that [Maher] 'retained' the . . . property" within the limitations period. *Id.* Maher argues that the statute of limitations commenced running upon his "conversion" of government property "when grant

10

funds were deposited into . . .[his] bank account," but Maher was indicted for "receiving, concealing, and retaining" government property, not for converting government property.

The text of section 641 makes clear that we must treat Mayer's offense of retaining government property as a continuing offense. Retain means "[t]o continue to hold, have, use, recognize, etc. and to keep," *Retain*, Black's Law Dictionary (6th ed. 1990), and "[t]o hold in possession or under control; to keep and not lose, part with, or dismiss," *Retain*, Black's Law Dictionary (11th ed. 2019). The essence of retention is possession, which itself is a "continuing offense" because the crime is not complete until the possessor parts with the item. *See United States v. D'Angelo*, 819 F.2d 1062, 1066 (11th Cir. 1987) ("Possession [of a firearm unlawfully] a continuing offense . . . ."); *United States v. Stitzer*, 785 F.2d 1506, 1519 (11th Cir. 1986) ("[P]ossession with intent to distribute is a continuing offense . . . ."). Likewise, the crime of retaining property unlawfully is not complete until the holder relinquishes the property to its rightful owner. Maher's offense of retaining government property continued so long as he possessed the federal grant money. Each day that he held onto the money created "a renewed threat" that it could not be recovered by the government. *See Toussie*, 397 U.S. at 122.

11

The district court did not err by denying Maher's motion for a judgment of acquittal. The statute of limitations for Maher's offense commenced running on the date that he last retained the grant money. *See Pacchioli*, 718 F.3d at 1302. Maher does not dispute that more than $6,000 of the grant money remained in his bank account on May 31, 2011. When the grand jury returned its indictment on May 17, 2016, fourteen days remained in the limitations period to prosecute Maher for receiving, concealing, and retaining property of the government. The grand jury timely indicted Maher.

## IV. CONCLUSION

We **AFFIRM** Maher's convictions for conspiring to commit mail fraud and wire fraud and for receiving, concealing, and retaining property of the government.