[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10351

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

LAMAR VICTOR MONCRIEFFE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:21-cr-20178-CMA-1

_____

Before JILL PRYOR, ANDERSON, and EDMONDSON, Circuit Judges.

PER CURIAM:

Lamar Moncrieffe appeals his conviction and 41-month sentence for possessing cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).[1]  No reversible error has been shown; we affirm.

Moncrieffe's conviction stems from these facts.  While on patrol at night, officers with the Miami Gardens Police Department saw several men outside a convenience store.  When the officers approached the group, one of the men -- later identified as Moncrieffe -- began running and ignored the officers' orders to stop.  Two officers pursued Moncrieffe on foot.  During the chase, Moncrieffe pulled a gun from his waistband and pointed it at one of the officers.  No shots were fired; the chase continued.  Shortly thereafter, Moncrieffe was tackled to the ground by a civilian bystander.

Officers handcuffed Moncrieffe and recovered the loaded gun he had been carrying and a gun magazine dropped during the chase.  Officers also discovered in Moncrieffe's hands a plastic baggie inside of which were 15 smaller plastic baggies containing a total of 4 grams of cocaine.

---

[1] Moncrieffe raises no challenge to his conviction for being a felon in possession of a firearm.

A federal grand jury charged Moncrieffe with being a felon in possession of a firearm and ammunition, 18 U.S.C. § 922(g)(1), 924(a)(2) (Count 1); possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count 2); and brandishing a firearm in furtherance of a drug-trafficking crime, 18 U.S.C. § 924(c)(1)(A) (Count 3).

Following a trial, the jury found Moncrieffe guilty on Counts 1 and 2 and acquitted him on Count 3. Moncrieffe was sentenced to 41 months' imprisonment on each of Counts 1 and 2, to run concurrently.

## I.

Moncrieffe first challenges the district court's ruling allowing Shaun Perry -- an agent with the Drug Enforcement Administration ("DEA") -- to testify as an expert witness.

We review a district court's admission of expert testimony under an abuse-of-discretion standard. *See United States v. Frazier*, 387 F.3d 1244, 1258 (11th Cir. 2004) (*en banc*). Under this standard, "we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." *Id.* at 1259

In determining whether expert testimony is admissible under Federal Rule of Evidence 702, the district court considers these three factors: (1) whether "the expert is qualified to testify competently regarding the matters he intends to address;" (2) whether "the methodology by which the expert reaches his conclusions is

sufficiently reliable as determined by the sort of inquiry mandated by *Daubert*;"[2] and (3) whether "the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Frazier*, 387 F.3d at 1260. The proponent of the expert testimony bears the burden of establishing qualification, reliability, and helpfulness. *Id.*

The district court abused no discretion in admitting Agent Perry's expert testimony. About Agent Perry's qualifications, the government presented evidence that Agent Perry had 25 years of experience as a DEA agent during which time he received training on drug-trafficking and firearms, was involved in hundreds of drug-trafficking investigations, worked as an undercover agent, and interviewed arrested drug-traffickers. In the light of Agent Perry's training and background, the district court determined reasonably that Agent Perry qualified as an expert on drug-trafficking operations. We have described as "well-established" that "an experienced narcotics agent may testify as an expert to help a jury understand the significance of certain conduct or methods of operation unique to the drug distribution business." *See United States v. Garcia*, 447 F.3d 1327, 1335 (11th Cir. 2006) (concluding that a DEA agent with several years' experience, involvement in at least 50 drug investigations, and training in drug-trafficking organizations was certified properly as an expert witness).

---

[2] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

The district court also conducted an adequate inquiry to assess the reliability of Agent Perry's testimony.  When -- as in this case -- an expert witness relies "solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *See Frazier*, 387 F.3d at 1261 (emphasis in original) (citing Fed. R. Evid. 702 advisory committee's note (2000 amends.)).  The district court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."  *Id.* at 1262.

Here, the district court held a pre-trial hearing during which Agent Perry testified about his decades-long experience as a DEA agent and explained how his experience and training supported his conclusion that the facts in this case -- including the manner in which the cocaine was packaged and the type of gun involved -- were indicative of drug-trafficking.  The record reflects that the district court evaluated sufficiently the reliability of Agent Perry's testimony before allowing him to testify as an expert.  The evidence presented at the pre-trial hearing also supports the district court's determination about reliability.

About helpfulness, the district court determined reasonably that Agent Perry's expert witness testimony would assist the jury in understanding the evidence, including the significance of the drug packaging and the firearm involved in this case.  *See Garcia*, 447 F.3d at 1335 ("The operations of narcotics dealers are a proper

subject for expert testimony under Rule 702."); *Frazier*, 387 F.3d at 1262-63 (explaining that expert testimony assists the trier of fact when it "concerns matters that are beyond the understanding of the average lay person").

We reject Moncrieffe's assertion that Agent Perry testified impermissibly about Moncrieffe's state of mind. Although Agent Perry testified that the plastic baggies and gun involved in this case were consistent with drug-trafficking, he stated no opinion about whether Moncrieffe had the requisite intent to distribute the drugs. We have said that an expert's testimony need not be excluded under Fed. R. Evid. 704(b) when -- as in this case -- the testimony "supports an obvious inference with respect to the defendant's state of mind [but] does not actually state an opinion on this ultimate issue, and instead leaves this inference for the jury to draw." *See United States v. Augustin*, 661 F.3d 1105, 1123 (11th Cir. 2011) (quotation and brackets omitted).

## II.

Moncrieffe next challenges the district court's denial of his motion for judgment of acquittal. Moncrieffe says the evidence presented at trial was insufficient to permit a jury to find that he intended to distribute the cocaine.

"We review *de novo* a district court's denial of judgment of acquittal on sufficiency of evidence grounds." *United States v. Rodriguez*, 732 F.3d 1299, 1303 (11th Cir. 2013). In determining the sufficiency of the evidence, "we consider the evidence in the light

most favorable to the government, drawing all reasonable inferences and credibility choices in the government's favor." *Id.* We cannot overturn a jury's verdict unless no "reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *Id.*

"[W]hen the government relies on circumstantial evidence, the conviction must be supported by reasonable inferences, not mere speculation." *Id.* Because the "jury is free to choose among reasonable constructions of the evidence," the government need not "disprove every reasonable hypothesis of innocence." *United States v. Foster*, 878 F.3d 1297, 1304 (11th Cir. 2018) (quotations omitted).

To obtain a conviction for possession with intent to distribute a controlled substance, the government must prove knowledge, possession, and intent to distribute. *See United States v. Hernandez*, 743 F.3d 812, 814 (11th Cir. 2014). Only the "intent" element is at issue in this appeal.

Viewed in the light most favorable to the government, the evidence presented at trial was sufficient to permit a reasonable factfinder to conclude beyond a reasonable doubt that Moncrieffe had the requisite intent to distribute the cocaine in his possession. On the day of his arrest, Moncrieffe was observed in a high-crime area, fled as soon as he was approached by officers, ignored officers' orders to stop, and pointed a gun at a pursuing officer. *See United States v. Garcia-Bercovich*, 582 F.3d 1234, 1238 (11th Cir. 2009) (noting that a jury may consider a defendant's flight from police as

evidence supporting a conviction for possession with intent to distribute).  The evidence also showed that Moncrieffe possessed a small gun and a plastic bag that held 15 small baggies of cocaine: facts the government's expert witness testified were consistent with drug-trafficking.  Cf. United States v. Mercer, 541 F.3d 1070, 1076 n.10 (11th Cir. 2008) (concluding that the defendant's possession of a "large number of plastic jeweler's bags" constituted evidence of intent to distribute a controlled substance).

The government also produced several recorded phone calls Moncrieffe made from jail.  During the recorded conversations, Moncrieffe instructed the person on the other end to keep his (Moncrieffe's) phone charged because people are always calling to "see who got it."  Moncrieffe also explained his pricing practices, referenced "scales" and "baggies," and told the other person to always "put it in the trunk" so the police would need a search warrant to find it.  While the recorded calls made no express reference to drug-trafficking, a jury could infer reasonably that Moncrieffe was instructing the other person on how to maintain Moncrieffe's drug-trafficking operations while Moncrieffe was in jail.

On appeal, Moncrieffe asserts that the government's evidence does not rule out that the cocaine was for his personal use. The jury, however, was free to -- and did -- reject this alternative hypothesis.  See Foster, 878 F.3d at 1304.

The evidence viewed in the light most favorable to the government supports the jury verdict.  The district court committed no error in denying Moncrieffe's motion for judgment of acquittal.

### III.

Moncrieffe next contends that the district court erred in applying a four-level enhancement -- under U.S.S.G. § 2K2.1(b)(6)(B) -- for possessing a firearm in connection with another felony offense.  Moncrieffe argues that the district court relied impermissibly on acquitted conduct in enhancing his sentence: an argument he concedes is foreclosed by binding precedent.

Under the Sentencing Guidelines, the district court may apply a four-level enhancement if the defendant "used or possessed any firearm or ammunition in connection with another felony offense."  U.S.S.G. § 2K2.1(b)(6)(B).  The enhancement applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense."  *Id.*, comment. (n.14(A)).  In the context of a drug-trafficking offense, the enhancement applies when "a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia."  *Id.*, comment. (n.14(B)).

"A district court's determination that a defendant possessed a gun 'in connection with' another felony offense is finding of fact that we review for clear error."  *United States v. Bishop*, 940 F.3d 1242, 1250 (11th Cir. 2019).

The district court committed no clear error in determining that Moncrieffe possessed a firearm "in connection with" another

felony offense.[3]  That Moncrieffe's gun was found "in close proximity" to the cocaine is undisputed: Moncrieffe had both items on his person during the police chase.  The district court thus concluded correctly that the four-level enhancement applied.  *See* U.S.S.G. § 2K2.1(b)(6)(B), comment. (n.14(B)).

Under section 2K2.1(b)(6)(B), a defendant need only possess a gun "*in connection with*" a felony offense to be subject to an enhanced sentence.  Because application of the sentencing enhancement does not require that a defendant brandish a firearm *in furtherance of* a drug-trafficking offense, the district court determined correctly that Moncrieffe's acquittal on Count 3 had "no bearing" on whether the sentencing enhancement applied.  Moreover -- even if the district court relied on acquitted conduct -- Moncrieffe's acquitted-conduct argument is foreclosed by binding precedent. *See United States v. Faust*, 456 F.3d 1342, 1346 (11th Cir. 2006) ("[A] jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long

---

[3] In addition to the felony drug offense, the district court also determined that Moncrieffe possessed a gun "in connection with" two felony offenses under Florida law: aggravated assault with a deadly weapon and resisting an officer with violence.  Moncrieffe raises no challenge to this portion of the district court's ruling; we may affirm on that basis alone. *See United States v. Maher*, 955 F.3d 880, 885 (11th Cir. 2020) ("To obtain reversal of a district court judgment that is based on multiple, independent grounds, [a defendant] must convince us that every stated ground for the judgment against him is incorrect.").

22-10351                Opinion of the Court                    11

as that conduct has been proved by a preponderance of the evi-
dence.").

AFFIRMED.