[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14828
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cr-20273-DPG-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SEIDNER ELINE,

Defendant-Appellant.

_____

No. 15-15113
Non-Argument Calendar

_____

D.C. Docket No.  1:15-cr-20273-DPG-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FLORE DORMEVIL,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(January 3, 2017)

Before WILSON, MARTIN, and ROSENBAUM, Circuit Judges.

PER CURIAM:

Seidner Eline and Flore Dormevil appeal their prison sentences, imposed after they each pleaded guilty to conspiracy to commit access device fraud, as well as aggravated identity theft.[1]  Eline and Dormevil appeal the district court's 4-level enhancement for fifty or more victims under United States Sentencing Guidelines § 2B1.1(b)(2)(B) and its 2-level enhancement for the production of an unauthorized access device under § 2B1.1(b)(11)(B)(i).  After careful review, we affirm.

I.

Eline and Dormevil pleaded guilty to conspiracy to commit access device fraud under 18 U.S.C. §§ 1029(b)(2) and aggravated identity theft under 18 U.S.C. § 1028A(a)(1).  Their plea agreements contained statements of facts detailing their offenses.  Eline and Dormevil used the personal information of employees of the city of North Miami to make unauthorized unemployment insurance claims and

_____

[1] We consolidated the appeals of these codefendants.

2

then receive benefits.  At Eline's residence, investigators found a thumb drive containing personal information for 300 people, as well as several unemployment-insurance debit cards in the names of others.  Both Eline and Dormevil used at least two of these cards to withdraw money at automated teller machines.  Their presentence investigation reports ("PSR") detailed that Eline and Dormevil filed 218 claims and that the Florida unemployment insurance paid them benefits for seventy-five people.

At the sentencing hearing, the district court overruled objections made by Eline and Dormevil to a 4-level guideline enhancement for fifty or more victims and a 2-level enhancement for producing an unauthorized access device.  Eline and Dormevil first argued that Florida's unemployment insurance fund was the only victim.  The government responded that Eline and Dormevil were paid for seventy-five claims, and suggested calling a witness to establish this fact.  Eline's counsel replied, "I am not sure what the Government wants to call a witness for but my position or my point is that the victim, there is really just one victim."  The district court asked both defendants about Guidelines § 2B1.1 Application Note 4(E), which defines "victim" in this section as "any individual whose means of identification was used unlawfully or without authority."  The court said this definition of victim suggests no testimony is necessary because the number of victims under that definition is undisputed.  Dormevil's counsel agreed with this

3

point.  The district court overruled the objection to the enhancement based on the number of victims, noting the Guidelines' definition of "victim" together with the PSR's finding that Eline and Dormevil used the personal information of seventy-five people to receive benefits.

Eline and Dormevil also objected to the enhancement for production of an unauthorized access device.  They argued they did not produce the debit cards, but rather received preloaded cards from the state unemployment insurance fund.  The district court overruled the objection, reasoning that the facts in the PSR were not in dispute and the access devices would not have been produced "but-for their actions."

On appeal, Eline argues that the government produced no evidence at the sentencing hearing to support its request for either enhancement.  Dormevil adopts Eline's arguments.  She also reasserts the arguments made against enhancement before the district court, namely that there was only one victim and that Eline and Dormevil did not produce the debit cards.  Further, Dormevil argues for the first time on appeal that the enhancements are barred under Guidelines § 2B1.6 Application Note 2, which renders certain sentencing enhancements inapplicable when a defendant is also sentenced for aggravated identity theft.

II.

"This Court reviews <u>de novo</u> the interpretation and application of the Guidelines, and reviews underlying factual findings, including the District Court's calculation of the number of victims, for clear error." <u>United States v. Rodriguez</u>, 732 F.3d 1299, 1305 (11th Cir. 2013). But "[w]e review sentencing arguments raised for the first time on appeal for plain error." <u>United States v. Bonilla</u>, 579 F.3d 1233, 1238 (11th Cir. 2009).

Eline and Dormevil argue that they challenged the lack of evidence to support the two guideline enhancements, triggering the government's burden to prove each enhancement by a preponderance of the evidence. Because the government did not offer evidence at the sentencing hearing to support the enhancements, Eline and Dormevil argue the district court erred in applying them.

Eline and Dormevil rely on <u>Rodriguez</u>, 732 F.3d 1299, in support of their argument. In <u>Rodriguez</u>, the defendant objected to the fifty-or-more victim enhancement on the basis that the government had proven only ten victims. <u>Id.</u> at 1304. At the sentencing hearing, the government provided affidavits of forty-two victims and a summary chart listing more victims. <u>Id.</u> at 1304–05. We held a district court could not rely solely on a summary chart to establish the number of victims. <u>Id.</u> at 1305. We noted "[w]hen a defendant challenges one of the factual bases of his sentence the Government has the burden of establishing the disputed

fact by a preponderance of the evidence." Id. (quotation omitted and alteration adopted). Further, we said an attorney's factual assertions alone do not constitute sufficient evidence. Id.

However, Rodriguez does not apply here. Unlike in Rodriguez, Eline and Dormevil made no factual attack on the number of victims listed in the PSR. Instead, they disputed the definition of "victim" in the Guidelines.[2] Questions of Guidelines interpretation are questions of law, and thus do not require evidentiary support. See id. at 1305 (holding that interpretations of the Guidelines are reviewed de novo). Eline's counsel even questioned the need for witnesses. And Dormevil's counsel agreed with the court that testimony would not be necessary because the number of victims under the Guidelines' definition was not disputed. The factual dispute over the number of victims and the argument that the government did not offer evidence to support that number are therefore raised for the first time on appeal. The district court did not commit plain error when it applied a guideline enhancement for fifty or more victims based on the undisputed statement in the PSR, nor did it plainly err by failing to ask the government to present evidence on this undisputed point. See United States v. White, 663 F.3d

---

[2] Dormevil made vague objections to the number of victims listed in the PSR (including disputing that there were 218 victims), but she made no explicit objection to the finding of seventy-five victims, on which the 4-level enhancement was based. To the contrary, Dormevil's counsel acknowledged at the sentencing hearing that this fact was not in dispute.

1207, 1216 (11th Cir. 2011) ("The district court may base its findings of fact at sentencing on . . . undisputed statements in the PSR . . . .").

Eline and Dormevil's argument that enhancement for production of an unauthorized access device was improper because they only received preloaded cards from the state unemployment insurance fund also raised a legal, not factual, objection. See United States v. Taylor, 818 F.3d 671, 674 (11th Cir. 2016) (treating the same argument as a legal question). Because they raised a question of law and not fact, the government was under no burden to prove the enhancements by a preponderance of the evidence. The district court therefore did not commit plain error in overruling the objection about the production of unauthorized access devices.

## III.

Dormevil also reasserts here the arguments she made in the district court: that there was only one victim and that she and Eline did not produce the debit cards. The district court did not err in its rulings on these points.

As the district court pointed out at sentencing, one of the Guidelines' definitions for "victim" in § 2B1.1(b)(2) is "any individual whose means of identification was used unlawfully or without authority." USSG § 2B1.1 cmt. n.4(e). This Court has held that a person's means of identification is "used" when the identification is employed towards "implement[ing] the purpose of the

7

conspiracy." United States v. Hall, 704 F.3d 1317, 1322 (11th Cir. 2013). The defendants implemented their conspiracy by filing for unemployment benefits with the personal information of at least seventy-five people without their authorization. Thus, these seventy-five people count as victims under the Guidelines.

This Court addressed the "production" argument in United States v. Taylor. There "we h[e]ld that 'production' for purposes of the § 2B1.1(b)(11)(B)(i) enhancement includes a situation in which a defendant willfully causes or induces an innocent third party to produce an unauthorized access device." Taylor, 818 F.3d at 678. Eline and Dormevil caused the Florida unemployment insurance office to produce the debit cards. Thus, the district court properly found that the defendants produced the debit cards.

IV.

Dormevil also argues for the first time on appeal that the enhancement for production of an unauthorized access device is barred under Guidelines § 2B1.6 Application Note 2. In relevant part, Guidelines § 2B1.6 Application Note 2 says: "If a sentence under this guideline [for aggravated identity theft] is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for the transfer, possession, or use of a means of identification when determining the sentence for the underlying offense." Id.

8

In <u>Taylor</u>, this Court held that Guidelines § 2B1.6 Application Note 2 "permits an offense-level enhancement when a defendant's criminal activity involved conduct that is separate from or in addition to the simple transfer, possession, or use of the means of identification at issue." <u>Id.</u> at 676. In other words, an enhancement for production, which is separate from transfer, possession, or use, is permitted. "Thus, we h[e]ld that imposition of the two-level enhancement pursuant to § 2B1.1(b)(11)(B)(i) is not prohibited in [aggravated identity theft] cases, so long as the enhancement is premised on the defendant's 'production' of an unauthorized access device . . . ." <u>Id.</u> Here, because the enhancement for an unauthorized access device is based on the production of debit cards, the district court did not plainly err when it applied the enhancement for production of an unauthorized access device.

Finally, Dormevil argues that Guidelines § 2B1.6 Application Note 2 should also bar the victim enhancement. The victim enhancement is unrelated to "the transfer, possession, or use of a means of identification," so the district court did not plainly err when it applied the victim enhancement.

**AFFIRMED.**

9