[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13291
Non-Argument Calendar

_____

D.C. Docket No. 1:18-cr-20828-DPG-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILBERT MEME,
a.k.a. Yoloking,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 20, 2020)

Before JORDAN, LAGOA, and EDMONDSON, Circuit Judges.


PER CURIAM:


Wilbert Meme appeals his convictions for aggravated identity theft and for possession of 15 or more unauthorized access devices.  No reversible error has been shown; we affirm.

A federal grand jury returned an 8-count indictment charging Meme with (1) access device fraud, in violation of 18 U.S.C. § 1029(a)(2) (Count 1); (2) 4 counts of aggravated identity theft -- in violation of 18 U.S.C. § 1028A(a)(1) -- committed during and in relation to the felony charged in Count 1 (Counts 2-5); (3) possession of 15 or more unauthorized access devices, in violation of 18 U.S.C. § 1029(a)(3) (Count 6); and (4) 2 counts of aggravated identity theft committed during and relation to the felony charged in Count 6 (Counts 7 and 8).  Meme pleaded not guilty and proceeded to a jury trial.

The jury found Meme guilty of the charged offenses.  The district court later sentenced Meme to a total sentence of 39 months' imprisonment.

On appeal, Meme challenges the district court's denial of some of his motions for judgment of acquittal.  Meme first challenges the sufficiency of the evidence supporting his convictions for Counts 6, 7, and 8.  Meme contends the

2

evidence presented at trial was insufficient to permit a jury to find that Meme was in constructive possession of the access devices and means of identification found on the thumb drives and laptop computer recovered during the search of Meme's father's house.  Meme next contends that insufficient evidence exists that the means of identification alleged in Counts 5 and 8 belonged to an actual person and that Meme lacked authority to use or possess the identifying information.[1]

"We review de novo a district court's denial of judgment of acquittal on sufficiency of evidence grounds."  United States v. Rodriguez, 732 F.3d 1299, 1303 (11th Cir. 2013).[2]  In determining the sufficiency of the evidence, "we consider the evidence in the light most favorable to the government, drawing all reasonable inferences and credibility choices in the government's favor."  Id.  We cannot overturn a jury's verdict unless no "reasonable construction of the evidence would have allowed the jury to find the defendant guilty beyond a reasonable doubt."  Id.

---

[1] Meme raises no challenge to his convictions for Counts 1 through 4 or to his sentence.

[2] On appeal, the government contends -- because Meme asserted only a general objection to the sufficiency of the evidence when he moved for judgment of acquittal and never raised expressly the specific arguments he now raises on appeal -- that our review should be limited to plain error. We need not decide this issue, however, because we conclude that the evidence presented at trial was sufficient to support Meme's convictions under a de novo standard of review.

Because the "jury is free to choose among reasonable constructions of the evidence," the government need not "disprove every reasonable hypothesis of innocence." United States v. Foster, 878 F.3d 1297, 1304 (11th Cir. 2018) (quotations omitted). "[W]hen the government relies on circumstantial evidence, the conviction must be supported by reasonable inferences, not mere speculation." Rodriguez, 732 F.3d at 1303.

Constructive Possession (Counts 6, 7 & 8):

In Count 6, Meme was charged with violating section 1029(a)(3), which makes it unlawful to "knowingly and with intent to defraud possess[] fifteen or more devices which are counterfeit or unauthorized access devices." See 18 U.S.C. § 1029(a)(3). An "access device" means, in pertinent part, "any card, . . . account number, . . . personal identification number, . . . or other means of account access that can be used . . . to obtain money . . . [or] to initiate a transfer of funds . . . ." Id. § 1029(e)(1). In Counts 7 and 8, Meme was charged with aggravated identity theft, in violation of section 1028A(a)(1), which requires unauthorized and knowing possession of another person's means of identification. See 18 U.S.C. § 1028A(a)(1). "The 'means of identification' element refers to 'a name, social

4

security number, date of birth, or driver's license number, among other things.'" United States v. Delva, 922 F.3d 1228, 1249 (11th Cir. 2019).

Possession may be either actual or constructive. "A person constructively possesses an item when he has knowledge of the thing possessed coupled with the ability to maintain control over it or reduce it to his physical possession, even though he does not have actual personal dominion." United States v. Baldwin, 774 F.3d 711, 722 (11th Cir. 2014) (quotations omitted). "Constructive possession also occurs when a person exercises ownership, dominion, or control over the contraband itself or dominion or control over the premises or the vehicle in which the contraband is concealed." Id. (quotations and alteration omitted).

Viewed in the light most favorable to the government, the evidence presented at trial was sufficient to permit a reasonable factfinder to conclude beyond a reasonable doubt that Meme had knowing and constructive possession of the unauthorized access devices and the means of identification found in his father's house.

First, overwhelming evidence demonstrated Meme's involvement in a pattern of fraudulent ATM transactions using stolen debit-card numbers. Surveillance footage showed Meme -- using debit-card numbers belonging to 39 different people -- initiating 93 separate ATM transactions, during which he

5

withdrew successfully over $21,000 and attempted to withdraw another $7,300. Also, one of the vehicles used regularly by the four participants in the fraud scheme was registered in Meme's name and contained mail addressed to Meme.

Evidence also exists tying Meme to both his father's house and to the thumb drives and laptop computer recovered from that house.  At trial, Agent Poston -- an investigator involved in searching the house -- identified one of the bedrooms inside the house as belonging to Meme.  Among the items found in that bedroom was a laptop computer, a thumb drive, a casino gaming card with Meme's name printed on it, and a receipt with Meme's name on it.  The thumb drive -- and a second thumb drive found in another room inside the house -- were both labeled with Meme's website name.  The thumb drives also contained files belonging to Meme, including Meme's business logo, photographs of Meme, different versions of songs recorded by Meme, and a music video depicting Meme.[3]  The thumb drives contained no files belonging to other participants in the fraud scheme.

In addition to the files associated with Meme's music, each thumb drive had a file containing over 80 debit-and-credit-card numbers and personal identifying information for people other than Meme.  Video surveillance shows Meme making

---

[3] Meme is a recording artist that goes by the name "Yolo King."

fraudulent ATM transactions using at least one of the debit-card account numbers found on the thumb drive recovered from Meme's bedroom.

On appeal, Meme says that -- even if the thumb drives were in his possession at some point -- the evidence does not rule out that the unauthorized access devices were saved onto the thumb drives after Meme relinquished possession and without Meme's knowledge.  The jury, however, was free to -- and did -- reject this alternative hypothesis.  See Foster, 878 F.3d at 1304.

Actual Person (Counts 5 & 8):

Meme next challenges as insufficient the evidence supporting his convictions in Counts 5 and 8 for aggravated identity theft against alleged victims "P.E." and "K.J."  Meme says that -- because neither P.E. nor K.J. testified at trial -- the government failed to prove beyond a reasonable doubt that each alleged victim was a real person and that Meme's use of the victims' identifying information was unauthorized.

To obtain a conviction for violation of 18 U.S.C. § 1028A(a)(1), the government must prove, among other things, that "the defendant knew that the

means of identification at issue belonged to another person." Flores-Figueroa v. United States, 556 U.S. 646, 657 (2009).

We reject flatly Meme's assertion that a victim of identity theft must testify for the government to prove adequately that the defendant knew the victim was a real person and that the defendant had no authority to use the victim's identifying information. A defendant's knowledge that the means of identification belonged to a real person may be proven using circumstantial evidence. We have said that "both the circumstances in which an offender obtained a victim's identity and the offender's later misuse of that identity can shed light on the offender's knowledge about that identity." See Delva, 922 F.3d at 1249.

Here, the evidence demonstrated Meme's participation in a scheme using stolen debit-card numbers to make unauthorized ATM withdrawals. The card number charged in Count 5 (ending in 5195 and belonging to K.J.) was one of 39 debit-card numbers Meme used to make ATM withdrawals. The pattern of Meme's transactions using the card ending in 5195 -- in which he first withdrew $60 and then attempted to withdraw larger amounts -- was consistent with Meme's method of withdrawing money using other stolen debit cards confirmed to belong to actual people. In a similar way, the card number charged in Count 8 (ending in 4288 and belonging to P.E.) was one of many card numbers stored on one of the

8

thumb drives as part of a "card dump" together with other means of identification confirmed as belonging to real people.  This evidence was sufficient for a reasonable factfinder to conclude that Meme knew that the means of identification charged in Counts 5 and 8 belonged to real people and that he lacked authority to possess or to use that information.

Because the evidence produced at trial was sufficient to allow the jury to find Meme guilty beyond a reasonable doubt, the district court committed no error in denying Meme's motions for a judgment of acquittal.

AFFIRMED.