[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13891

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

LESLIE MEYERS,
a.k.a. Les Meyers,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 1:18-cr-00058-LAG-TQL-1

_____

Before NEWSOM, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

Leslie Meyers pleaded guilty to various counts involving dogfighting and being a felon in possession of a firearm. On appeal, he argues that the district court erred when it found at sentencing that he hanged his dog to death without requiring the government to establish that fact by a preponderance of the evidence. After careful review, and with the benefit of oral argument, we agree with Meyers that the district court erred in making its factual finding concerning the alleged hanging. We, therefore, **VACATE** and **REMAND** for resentencing.[1]

**I**

Meyers raised pit bulls. At least once, he entered one of his pit bulls in a fight in Sumter County, Georgia. A few hours into the event, law enforcement officials from various agencies executed a search warrant of the premises. The officers found—among other things—a dead pit bull terrier. Video evidence showed that it had participated in the fight, and it was later identified as Meyers's dog.

More than a year later, law enforcement executed a search warrant at a property where Meyers lived with his girlfriend. Agents found 27 pit-bull-type dogs, one Great Dane, and one

---

[1] Meyers also challenges the district court's sentence as substantively unreasonable. Because we agree with Meyers on his first challenge to the district court's sentence, we needn't address his substantive-reasonableness challenge.

German Shepherd.  The pit bulls were chained and in physical conditions consistent with being used for dog fighting.  Agents also discovered various equipment and paraphernalia related to dogfighting.  Agents seized the animals and surrendered the Great Dane and German Shepherd to local animal control officers.

A grand jury charged Meyers in a multi-defendant indictment on 32 counts.  Meyers pleaded guilty to five counts, and the government dismissed the other 27.[2]  Meyers waived his right to appeal except in the event that the district court imposed a sentence higher than the guidelines range, and the government agreed to recommend a sentence of no longer than 72 months.

A United States probation officer filed a presentence investigation report that discussed the five offenses.  The PSI included an allegation from Meyers's co-defendant Timothy White that Meyers hanged his dog to death because the dog refused to commit a "courtesy scratch"—an opportunity for the victorious dog in a fight to attack a wounded loser in order to further maim or kill it.  Based on its consideration of the facts underlying the charges, Meyers's

---

[2] The five counts to which Meyers pleaded guilty were: (1) conspiring to violate the Animal Welfare Act, in violation of 18 U.S.C. § 371 in connection with 7 U.S.C. § 2156(a), (b) and 18 U.S.C. § 49; (2) and (3) transporting a dog for use in an animal fighting venture in violation of 7 U.S.C. § 2156(b) and 18 U.S.C. § 49; (4) sponsoring and exhibiting a dog in an animal fighting venture in violation of 7 U.S.C. § 2156(a)(1) and 18 U.S.C. § 49; and (5) knowingly possessing a firearm after knowing he had been convicted of a felony in violation of 18 U.S.C. §§ 924(a)(2) and 922(g)(1).

criminal history, and his personal characteristics, the PSI concluded that Meyers's sentencing range was 77 to 96 months.

Meyers filed a written objection to the PSI pursuant to Federal Rule of Criminal Procedure 32(f) and Local Criminal Rule 32.1(b). Meyers's only objections were to two paragraphs in the PSI that discussed his prior criminal history. Meyers didn't object to the allegation that he hanged his dog to death.

At sentencing, Meyers told the court that he had the opportunity to review the PSI, that he had no questions about it, and that he had reviewed his objections to the PSI with his counsel and had no further objections. The district court overruled Meyers's written objections and asked the parties if there were any further objections. Both parties replied that there weren't, and the district court adopted the PSI as written. The district court heard from both parties' counsel on the recommended sentence and took testimony from Meyers himself and his two nephews. At no point during this time did Meyers contest the allegation that he had hanged his dog to death.

Finally, the district court discussed its sentencing considerations. Regarding the dog's hanging, the district court said that the allegation "bl[ew its] mind" and that it had been "fighting for . . . months . . . to understand" Meyers's conduct but said it had to "take that into account and incorporate that into the nature and circumstance of the offense." Doc. 561 at 23. At this point—for the first time—Meyers contested the allegation that he hanged his dog to death, stating that he "did not . . . hang that animal." *Id.* Meyers

21-13891                Opinion of the Court                5

went on to say, "as God is above" and offering to "put [his] hand on a Bible" or "even take a lie detector test," that the allegation was a "complete lie" and that he left the dog with two hosts after the fight. *Id.* at 23–25. Even so, after listening to Meyers, the district court said that "the evidence in the case is that [the hanging by Meyers] did occur." *Id.* at 25. The court also said that "[t]he evidence that has been presented up to this time in this case indicates to me and I am making a finding of fact that I do believe that you did, in fact, kill that dog as has been described in the record . . . ." *Id.* at 27.

Taking that fact and Meyers's criminal history into account, the district court determined that an upward variance was appropriate and sentenced Meyers to 60 months for counts one through four to run concurrently and 63 months for count five to be served consecutively for a total of 123 months. Meyers objected to the sentence, arguing that it was excessive, pointing specifically to the government's recommendation of a 72-month sentence.

This appeal followed.[3]

## II

A sentencing court can make findings of fact for purposes of sentencing "based on [1] evidence heard during trial, [2] facts

---

[3] We review legal questions concerning the Federal Rules of Criminal Procedure de novo. *United States v. Spears*, 443 F.3d 1358, 1361 (11th Cir. 2006); *see also United States v. Beach*, 113 F.3d 188, 189 (11th Cir. 1997) ("Because [the] appeal presents legal questions regarding the application of . . . rules of procedure, review is *de novo*.").

admitted by a defendant's plea of guilty, [3] undisputed statements in the presentence report, or [4] evidence presented at the sentencing hearing." *United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir. 1989). If a defendant disputes a fact in the PSI, a district court "must . . . rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing . . . ." Fed. R. Crim. P. 32(i)(3)(B). For a defendant to properly object to his PSI, his challenge must be made with "specificity and clarity," so that the government and the district court know the mistake of which he complains. *United States v. Ramirez-Flores*, 743 F.3d 816, 824 (11th Cir. 2014) (quoting *United States v. Aleman*, 832 F.2d 142, 145 (11th Cir. 1987)). A defendant also needs to object in a timely manner. Fed. R. Crim. P. 32(f)(1). A district court has discretion to waive the timeliness requirement for good cause. *United States v. Aguilar-Ibarra*, 740 F.3d 587, 591 (11th Cir. 2014); *see also* Fed. R. Crim. P. 32(i)(1)(D). When a defendant "dispute[s]" a portion of the PSI, Fed. R. Crim. P. 32(i)(3)(B), "the Government has the burden of establishing the disputed fact by a preponderance of the evidence." *United States v. Rodriguez*, 732 F.3d 1299, 1305 (11th Cir. 2013) (quotation marks and citation omitted). The government meets its burden by putting forth "reliable and specific evidence." *United States v. Sepulveda*, 115 F.3d 882, 890 (11th Cir. 1997) (quotation marks and citation omitted).

Meyers contends that the district court erred under Rule 32(i)(3)(B) when it found that he hanged his dog to death without requiring the government to establish that fact based on a

preponderance of the evidence.  He concedes that his objection to the alleged fact was untimely under Rule 32(f)(1) but argues that the district court excused his untimeliness by resolving the objection on the merits.  The government asserts that the district court didn't recognize that Meyers was asking to make a new objection or that he was asking for an exception to his untimeliness based on good cause.  Meyers replies that his words and the context in which he interjected "made clear that he did not want the [sentencing] court to consider the disputed fact that he killed the dog in sentencing him, on the ground that the allegation was not truthful."

We hold that Meyers satisfied the "specificity and clarity" requirements when he interjected at the sentencing hearing.  In pertinent part, Meyers told the court:

> Your honor, I was just going to address [the alleged fact about hanging the dog to death.]  I don't -- you might not feel that that's the truth or whatever.  And as God is above, I did not take off a belt off my waist and hang that animal. . . .  [T]hat's a complete lie.  I didn't do that. . . .  I did not pull any -- I didn't even wear a belt that night to that situation for me to pull a belt off my waist and hang the dog until it was dead. . . .  I'll put my hand on a Bible or whatever needs to be done or even take a lie detector test to determine I didn't do that -- that it didn't happen.  I was supposed to address that before we got to this part, but it slipped my mind about it.

With regard to specificity, Meyers's interjection was targeted solely at the allegation that he hanged his dog to death; it was an

objection not to the PSI in general, but rather to a singular fact. And as to clarity, Meyers's offer to "put [his] hand on a Bible or do whatever needs to be done or even take a lie detector test" and his acknowledgement that he was supposed to bring this issue up earlier indicate that he was disputing that fact from the PSI.

The sentencing court's response, in turn, indicates that it recognized Meyers's interjection as an objection to the PSI that would place the alleged fact in dispute. It said:

> [I]n making this [sentencing] determination, the Court has considered . . . the nature and circumstances of the offense, including the manner and death of one animal. And I am making a specific finding. I hear what you're saying now. The evidence that has been presented up to this time in this case indicates to me and I am making a finding of fact that I do believe that you did, in fact, kill that dog as has been described in the record . . . .

Meyers met his burden of making a specific and clear objection to the PSI—albeit an untimely one. The district court recognized his interjection as such and "ma[de] a specific finding" that Meyers did hang his dog to death. It said that "[t]he evidence . . . presented up to this time" supported that determination. The key question is whether sufficient evidence supported that finding. Recall that a district court has four potential bases to make factual findings at sentencing: "[1] evidence heard during trial, [2] facts admitted by a defendant's plea of guilty, [3] undisputed statements in the presentence report, or [4] evidence presented at the sentencing

hearing." *Wilson*, 884 F.2d at 1356. Because there was no trial in this case, the government conceded at oral argument that there was nothing in Meyers's guilty plea admitting to the hanging, and no new evidence was presented at the sentencing hearing, Options 1, 2, and 4 are out. That leaves only Option 3—"undisputed statements in the presentence report."

The problem is that by acknowledging Meyers's objection and making the finding, the district court also—though perhaps unintentionally—acknowledged that the fact was disputed. At that point, the district court had two options under Rule 32(i)(3)(B): It could either rule on the dispute or determine that a ruling was unnecessary "either because the matter w[ould] not affect sentencing, or because the court w[ould] not consider the matter in sentencing."

The district court couldn't take the second route because it had already stated that it had considered the matter in sentencing, and because it had said previously that the hanging of the dog "bl[ew its] mind" and that it "ha[d] been fighting for the months that this case ha[d] been in front of [it] to understand it." Doc. 561 at 23. That left the first route—ruling on the dispute. But that meant the district court had to require the government to establish the alleged fact by a preponderance of the evidence. *Rodriguez*, 732 F.3d at 1305. What the court couldn't do is rely on the now-

disputed portions of the PSI.[4] But that's what it did. In doing so, it erred.[5]

## III

Because the district court erred when it made a factual finding regarding a disputed fact without requiring the government to establish that fact by a preponderance of the evidence, we **VACATE** Meyers's sentence and **REMAND** for the district court to allow the government an opportunity to establish the allegation that Meyers hanged his dog to death by a preponderance of the evidence.

---

[4] The district court could of course rely on *undisputed* statements in the PSI. *See Wilson*, 884 F.2d at 1356. Meyers's specific objection to the PSI was that he didn't hang his dog to death. But he didn't dispute, for example, that he owned the dog that was killed, that he exhibited the dog in the first fight, or that the dog was found dead behind his car. Even so, we don't think that the undisputed portions of the PSI provide a sufficient basis for concluding by a preponderance of the evidence that Meyers hanged his dog to death. That Meyers owned the dog and entered it into a fight certainly doesn't establish that he killed it; indeed, Meyers's dog's victory in the fight might more reasonably imply that he had no motive to do so. Nor do the remainder of any undisputed facts in the PSI satisfy the preponderance standard.

[5] We acknowledge that the district court could have overruled Meyers's objection on the ground that it was untimely under Rule 32(f)(1). *Aguilar-Ibarra*, 740 F.3d at 591. But it didn't. There is no hint in the sentencing transcript that the court rejected Meyers's objection on timeliness grounds. Rather, the transcript makes clear that the sentencing court resolved the dispute on the merits when it said, "I am making a specific finding. . . . The evidence . . . indicates to me and I am making a finding of fact that I do believe that you did, in fact, kill that dog as has been described in the record . . . ." Doc. 561 at 27.