**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 24-13680

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BABATUNDE FRANCIS AYENI,
    a.k.a. Francis Ayeni,
    a.k.a. Olamide Ayeni,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:22-cr-00253-TFM-N-1

————————————————

Before ROSENBAUM, GRANT, and ABUDU, Circuit Judges.

PER CURIAM:

Babatunde Ayeni and two co-conspirators engaged in a sophisticated scheme to steal money from prospective home buyers in the United States by compromising their emails. The scheme worked: they made off with a staggering $19,000,000 taken from over 200 victims. But the government eventually tracked Ayeni down in the United Kingdom and charged him with conspiring to commit wire fraud and money laundering. He pleaded guilty to wire fraud conspiracy, and the district court sentenced him to an above-Guidelines sentence of 120 months' imprisonment. On appeal, Ayeni argues that the district court imposed an unreasonable sentence. We disagree and affirm.

## I.

In 2023, a grand jury indicted Ayeni and two others for conspiring to commit wire fraud and money laundering. *See* 18 U.S.C. §§ 1349; 1956(h). The indictment charged them with engaging in a business-email compromise scheme that targeted real-estate purchases throughout the United States.

A business email compromise scheme, unsurprisingly, involves hacking into a business's email accounts. Ayeni and the others—all while living outside the United States—created email accounts using legitimate-looking domains. They used those accounts to send phishing emails to employees at real-estate businesses. The innocent-looking emails included attachments or links that prompted employees to enter their log-in credentials. Typing those credentials in, however, allowed the conspirators to monitor the email traffic on the employees' accounts. The

conspirators specifically looked for dates when buyers were scheduled to make payments to complete real-estate purchases. As such a date approached, the conspirators would send the buyers emails intended to trick them into sending the money right into the conspirators' pockets. A lot of the time, the scheme worked; the government estimated that the conspirators stole more than $19,000,000 from 231 victims. The conspirator's intended loss, however, was upwards of $54,000,000.

The government traced several "spoofed" email accounts to Ayeni and tracked him down in the United Kingdom using the IP addresses associated with the accounts. British authorities arrested and extradited him to the United States. In April 2024, Ayeni pleaded guilty to wire fraud conspiracy under a written plea agreement. He admitted that he played a part in the conspiracy, and that he was involved in two specific instances of wire fraud that occurred in the Southern District of Alabama. He also admitted that the conspiracy "involved numerous acts like" the two described in the plea agreement.

Ahead of sentencing, the Probation Office prepared a presentence investigation report. Probation calculated Ayeni's total offense level at 28, which included a 22-level increase for loss between $25 and $65 million and a 2-level increase for more than 10 victims. The report used the conspirators' intended loss ($54 million) rather than the actual loss ($19 million). Ayeni's advisory Guidelines range was 78 to 97 months. The government moved for a 40% downward departure from the low-end of this range

based on Ayeni's substantial assistance to the FBI. *See* U.S. Sentencing Guidelines § 5K1.1 (Nov. 2016).

The district court adopted the presentence report's Guidelines calculation at sentencing. And it granted the government's substantial-assistance downward-departure motion. But after hearing testimony from an FBI Agent and several victims during the hearing, the court decided that "applying the guidelines in this matter would work an injustice upon the victims." As the court's intention to vary from the Guidelines was "news" to Ayeni, it continued the sentencing to a later date.

At the second sentencing hearing, the district court varied upward from the Guidelines range and sentenced Ayeni to 120 months' imprisonment. The court stated that a lesser sentence "would never have served the ends" of 18 U.S.C. § 3553(a). Ayeni appealed.

## II.

We review a defendant's sentence under a deferential abuse-of-discretion standard. *United States v. Henry*, 1 F.4th 1315, 1319 (11th Cir. 2021).

## III.

Ayeni argues on appeal that the district court imposed a substantively unreasonable sentence. But several of his arguments sound in procedural reasonableness—namely, that the district court disregarded the Guidelines, that it relied on improper facts, and that it did not adequately explain its chosen sentence. *United*

*States v. Thomas*, 108 F.4th 1351, 1356 (11th Cir. 2024). We assess his arguments in turn.

### A.

Start with Ayeni's procedural-reasonableness challenges.[1] He first argues that the district court disregarded the Sentencing Guidelines. True, the district court must take the Guidelines range into account when fashioning its sentence. *See Gall v. United States*, 552 U.S. 38, 50 n.6 (2007); 18 U.S.C. § 3553(a)(4). But the district court here did exactly that. The court "looked at the guidelines in this matter" and adopted the presentence report's Guidelines calculations. And the court explained that it decided "to depart from the guidelines" because the resulting range was "woefully inadequate." That choice does not show that the court *disregarded* the Guidelines—it shows that it *considered* the Guidelines and found them insufficient. That determination was within the court's discretion. *See Henry*, 1 F.4th at 1328.

Ayeni next argues that the district court inadequately explained its chosen sentence. A court must explain the sentence— whether it is within or outside the Guidelines—to "allow for meaningful appellate review." *Gall*, 552 U.S. at 50. When it imposes an upward variance, a court must adequately explain "why the variance is appropriate." *United States v. Moran*, 778 F.3d

---

[1] The government urges us to review Ayeni's procedural-reasonableness arguments under the plain-error standard because he failed to raise them below. We need not decide this standard-of-review issue on appeal, however, because we find that the district court committed no error.

942, 983 (11th Cir. 2015).  And its explanation must be "sufficiently compelling to support the degree of the variance."  *United States v. Irey*, 612 F.3d 1160, 1187 (11th Cir. 2010) (en banc) (quoting *Gall*, 552 U.S. at 50).

The court's explanation sufficed here.  In varying upward, it stressed that Ayeni's crime had far-reaching, foreseeable consequences.  One such consequence, the court explained, was the potential for identity theft.  The conspirators targeted any business involved in real-estate transactions—which includes law firms.    And that meant they had access to privileged communications between attorneys and clients.    Plus, by monitoring real-estate transactions, the conspirators gained access to the buyer's social security number and other sensitive information.    So the victims suffered not only financial and emotional hardship then, but also the on-going threat of identity theft now.  Additionally, the district court emphasized that the conspirators committed this scheme in a country where extradition is difficult.  Based on this and other factors, the court believed that Ayeni's involvement warranted the statutory maximum sentence of 240 months' imprisonment.

The district court thus set forth "sufficiently compelling" reasons for varying upward.  *Gall*, 552 U.S. at 50.  Indeed, the court did not go as high as it could have.  It also explained that Ayeni's relatively lesser role in the conspiracy and his cooperation with the government led it to choose 120 months instead of the 240-month maximum.

Ayeni finally argues that the court considered "non-existent facts," like the victims' non-economic harms. But these facts were far from "non-existent": the threat of leaked confidential and privileged information was "supported by substantial evidence" in the record. *United States v. Rodriguez*, 732 F.3d 1299, 1305 (11th Cir. 2013) (quotation omitted). An FBI agent testified at sentencing about the conspirators' target businesses and their access to the victim's sensitive information. And several victims told the court that they suffered extreme emotional harm after the funds they planned to use to buy a home were taken from them (and often unrecoverable). These facts were in the record, and the district court committed no error by considering them.

## B.

We now turn to Ayeni's substantive-reasonableness challenge. We give "due deference" to the district court's sentencing decision. *Gall*, 552 U.S. at 51. A sentence outside the Guidelines range is not presumed to be substantively unreasonable, although we take the variance (and the court's justification for it) into account. *See id.*; *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009). We will vacate the sentence only when the defendant shows "that the district court committed a clear error of judgment in weighing the § 3553(a) factors." *Irey*, 612 F.3d at 1190 (quotation omitted); *see also United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010).

Ayeni did not meet his burden here. True, the district court varied upward in this case. But "[n]othing prevents a court from

varying from the Guidelines based on the § 3553(a) sentencing factors." *Henry*, 1 F.4th at 1327.  And nothing prevents a court from giving extra weight to certain factors that the "probation officer already had considered in calculating the defendant's advisory guidelines range." *Moran*, 778 F.3d at 983.

The district court acted within its discretion when it gave significant weight to the number of victims, the victims' non-economic harm, and that the defendants committed this crime outside the country.  Ayeni argues that the court gave too much weight to these factors, and too little to his modest standard of living as proof that he did not possess the ill-gotten gains.  But "we will not substitute our judgment" for the district court's "in weighing the relevant factors." *United States v. Langston*, 590 F.3d 1226, 1237 (11th Cir. 2009) (quotation omitted).

What's more, a "sentence well below the statutory maximum indicates reasonableness." *Thomas*, 108 F.4th at 1357. Ayeni's 120-month sentence is half the 240-month statutory maximum. *See id*. at 1358.  The district court did not abuse its discretion in varying upward and sentencing Ayeni to 120 months' imprisonment.

★        ★        ★

We **AFFIRM** the judgment of the district court.